IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR325 |
| | ) | |
| v. | ) | |
| | ) | |
| VALENTIN CUEVAS-ARREDONDO, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on defendant's timely
motion to vacate, set aside, or correct sentence by a person in
federal custody under 28 U.S.C. § 2255 (Filing No. 77).  For the
reasons set forth herein, the Court finds that the defendant's
motion should be denied.

### I. BACKGROUND

On August 17, 2005, a four-count indictment was filed
in the United States District Court for the District of Nebraska
naming Valentin Cuevas-Arredondo ("Cuevas-Arredondo") as a
defendant.  Count I of the indictment charged Cuevas-Arredondo
with knowingly and intentionally possessing with intent to
distribute a mixture or substance containing a detectable amount
of methamphetamine in violation of Title 21, United States Code,
Sections 841(a)(1), 841(b)(1), and Title 18, United States Code,
Section 2.  Count II of the indictment charged Cuevas-Arredondo
with knowingly and intentionally possessing with intent to
distribute a mixture or substance containing a detectable amount

of cocaine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), and Title 18, United States Code, Section 2. Count III charged Cuevas-Arredondo with being an alien illegally or unlawfully in the United States, knowingly possessing a firearm which had been shipped and transported in interstate commerce. Count IV charged another party and is irrelevant to these proceedings. Trial began on December 12, 2005, and on December 13, 2005, the jury returned a verdict finding Cuevas-Arredondo guilty on Counts I, II, and III. (Filing No. 40.) This Court held a sentencing hearing and entered judgment on March 10, 2006 (Filing No. 51).

On direct appeal, Cuevas-Arredondo argued that the evidence was insufficient for a reasonable jury to convict him of any of the aforementioned crimes, and that this Court erred in assessing a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The United States Court of Appeals for the Eighth Circuit affirmed his sentence on December 4, 2006 (Filing No. 67). On October 12, 2007, Cuevas-Arredondo filed this timely motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Filing No. 77) ("2255 Motion"). This is his first petition pursuant to § 2255.

## II. DISCUSSION

Cuevas-Arredondo sets forth ten grounds as the basis for his *pro se* motion under 28 U.S.C. § 2255. First, Cuevas-

-2-

Arredondo contends that he was denied his Sixth Amendment right to effective assistance of counsel.  Second, Cuevas-Arredondo asserts that Fed. R. Crim. P. 6 was violated when the government failed to serve notice upon defense counsel of the grand jury convening.  Third, Cuevas-Arredondo states that Fed. R. Crim. P. 6(f) was violated as there is no indication or entry on the master docket signifying that the voting concurrence forms were ever duly filed with the clerk of the court.  Fourth, Cuevas-Arredondo again contends that there was ineffective assistance of counsel.  Fifth, Cuevas-Arredondo asserts that he was denied his Sixth Amendment right to have a jury of his peers determine the elements of the offense.  Sixth, Cuevas-Arredondo claims that the government never empaneled a lawful grand or petit jury. Seventh, Cuevas-Arredondo complains that the indictment as presented was and is not sufficient to sustain his conviction. Eighth, Cuevas-Arredondo contends that the Double Jeopardy Clause was violated by "dule [sic] sentencing."  Ninth, Cuevas-Arredondo argues that Title 18 and Title 28, United States Code, were never lawfully enacted into "positive law."  Finally, Cuevas-Arredondo asserts a lack of subject matter jurisdiction.

A. Procedural Default

        Many of the issues raised in Cuevas-Arredondo's motion claim constitutional violations which could be raised on

-3-

collateral review.[1]  However, none of the arguments Cuevas-
Arredondo presents were raised on direct appeal and therefore
each of them is procedurally barred.  "Where a defendant has
procedurally defaulted a claim by failing to raise it on direct
review, the claim may be raised in habeas only if the defendant
can first demonstrate either "cause" and actual "prejudice," or
that he is "actually innocent . . . ."  *Bousley v. United States*,
523 U.S. 614, 622 (1998) (internal citations omitted).  The only
grounds raised on direct review were that the evidence at trial
was insufficient to sustain a conviction and that this Court
improperly applied a two-level sentencing enhancement for
obstruction of justice.  *See United States v. Cuevas-Arrendondo*,
469 F.3d 712, 715-16 (8th Cir. 2006).  Cuevas-Arredondo does not
argue in his motion that he is actually innocent of the crime he
was convicted of.  Therefore, in order for these claims to be
considered here, he must show cause and actual prejudice.

The United States Supreme Court has stated that "the
existence of cause for a procedural default must ordinarily turn
on whether the prisoner can show that some objective factor
external to the defense impeded counsel's efforts to comply with
the . . . procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488

---

[1] But not all.  Cuevas-Arredondo's complaints of violations of Fed. R. Crim. P. 6 and 6(f) probably do not state constitutional claims.  It should be noted that, in general, non-constitutional claims are not cognizable under § 2255.  *Estelle v. McGuirre*, 502 U.S. 62 (1991); *United States v. Timmreck*, 441 U.S. 780 (1979).  However, because these claims are also procedurally barred, the Court need not reach this issue.

-4-

(1986).  Save one, each of the issues presented in Cuevas-Arredondo's motion do not pass this test.  For example, no objective external factor impeded Cuevas-Arredondo's counsel from raising the issue of whether there was a double jeopardy violation during direct appeal.

Cuevas-Arredondo's ineffective assistance of counsel claims may be reviewed, however, because "[i]neffective assistance of counsel . . . is cause for a procedural default." *Id*.  Therefore, the only claim not barred by the procedural default rule is the claim for ineffective assistance of counsel.  However, because this Court liberally construes *pro se* petitions, it will consider each of the defaulted claims as contending that counsel was ineffective in not raising the appropriate motion at trial or upon appellate review.  *See Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004).  Thus, for example, Cuevas-Arredondo's double jeopardy claim will be considered as a claim that counsel was ineffective because he failed to raise the double jeopardy issue at trial or upon direct review.

B. Ineffective Assistance of Counsel

The United States Supreme Court has long recognized that the Sixth Amendment right to counsel is necessary to protect the fundamental right to a fair trial.  *Strickland v. Washington,* 466 U.S. 668, 684 (1984).  This right to counsel is "the right to effective assistance of counsel."  *Id*. at 686 (quoting *McMann v.*

-5-

*Richardson*, 397 U.S. 759, 771, n.14 (1970)).  An ineffective assistance of counsel claim has two components:  (1) the defendant must show that counsel's performance was deficient; and (2) the defendant must show that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

To demonstrate prejudice, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*.  The Supreme Court has stated that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693.  Rather, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  The Court must ask whether a reasonable probability exists that absent the errors, the factfinder would have a reasonable doubt respecting guilt, based upon the totality of the evidence.  *Id*. at 695.  Cuevas-Arredondo has failed to make the requisite showing of either deficient performance by counsel or prejudice with respect to each of the issues he raises.

-6-

### 1. Violations of Fed. R. Crim. P. 6 and 6(f)

Cuevas-Arredondo argues that counsel was ineffective because he did not object at trial or argue on appeal that there was no notice to him of the convening of the grand jury which would allow him to challenge the array of jurors "before the administration of the oath to the jurors." (2255 Motion, at 26.) In his motion, Cuevas-Arredondo cites language in former Fed. R. Crim. P. 6(b) which states that "[c]hallenges [to the grand jury] shall be made before the administration of oath to the jurors." (*Id.* at 25.) However, that language was deleted by the 2002 amendment to Rule 6 because the cited way of handling grand juries "does not comport with modern practice." Fed. R. Crim. P. 6 advisory committee's note. Cuevas-Arredondo was indicted in 2005 (Filing No. 1). Because it is based on language which had been removed from Rule 6 by the time of his indictment, Cuevas-Arredondo's argument lacks merit and counsel could not have been ineffective in failing to assert it.

Cuevas-Arredondo also contends that counsel was ineffective in not objecting to violations of Fed. R. Crim. P. 6(c) and 6(f) as well as to other irregularities in the grand jury process or in failing to raise those issues on appeal. For example, Cuevas-Arredondo argues that there was no entry on the master docket signifying that the voting concurrence forms were ever duly filed with the clerk of the court. There was no

-7-

ineffective assistance of counsel in failing to raise these issues on appeal because raising them would not have changed the result of the proceeding.  It is well settled that conviction by a petit jury under a heightened standard of proof shows the harmlessness of most grand jury errors.  For example, in another drug conspiracy case applying Fed. R. Crim. P. 6, the United States Supreme Court held that "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted.  Therefore, the convictions must stand despite the rule violation." *United States v. Mechanik*, 475 U.S. 66, 67 (1986).  The same is true here.  The fact that Cuevas-Arredondo was found guilty of the crimes he was charged with demonstrates that there was probable cause to charge him.  Counsel was not ineffective in failing to raise an issue that had no chance of success.

> 2.  Sixth Amendment - Jury of Peers to Determine
> Elements of Offense

Cuevas-Arredondo urges that he received ineffective assistance of counsel because no jurisdictional objection was made at trial or on appeal that "UNITED STATES DISTRICT COURTS are not true Article III Courts . . . but are Article IV courts." He argues that because counsel failed to object, he did not receive "judicial proceedings according to the course of the common law" as required by Article III of the Constitution, and

-8-

therefore a jury of his peers did not determine the elements of
his offense (2255 Motion, at 20-21).  Setting aside the fact that
the language Cuevas-Arredondo quotes in his motion does not
appear in Article III, this argument must fail because United
States District Courts are, in fact, Article III courts.  Cuevas-
Arredondo cites two cases in support of his contention:  *American
Insurance Co. v. 356 Bales of Cotton*, 26 U.S. 511 (1828), and
*Balzac v. Porto Rico*, 258 U.S. 298 (1921).  Neither case supports
Cuevas-Arredondo's argument.  In *American Insurance*, Chief
Justice Marshall described the pre-statehood Superior Courts of
Florida as "not Constitutional Courts, in which the judicial
powers conferred by the Constitution on the general government
can be deposited. . . .  They are legislative Courts, created in
virtue of the general right of sovereignty . . . or in virtue of
[Article IV]."  *Am. Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511,
512 (1828).  In *Balzac*, the Court stated that "[t]he United
States District Court is not a true United States court
established under article 3 of the Constitution . . . .  It is
created by virtue of the sovereign congressional faculty, granted
under article 4, § 3 . . . of making all needful rules and
regulations respecting the territory belonging to the United
States."  *Balzac v. Porto Rico* 258 U.S. 298, 312 (1921).  These
cases are distinguished from Cuevas-Arredondo's because the
subject courts were in territories which were not States of the

United States at the time of the decisions.  Florida became a
State in 1845, 17 years after the *American Insurance* decision.
To date, Puerto Rico has not gained statehood.  However, Nebraska
was admitted to the union in 1867.  Therefore the cases cited do
not apply.  Cuevas-Arredondo can rest assured that the jury which
convicted him (*See* Filing No. 40) was part of an Article III
court.  Inasmuch as the Court concludes that it is in fact an
Article III court, Cuevas-Arredondo could not have been
prejudiced by his counsel's failure to argue that he was not
tried before an Article III jury.

      3. Sixth Amendment - Grand or Petit Jury

      Cuevas-Arredondo argues that violations of Fed. R.
Crim. P. 6 denied him his right to grand jury indictment.
However, Cuevas-Arredondo was indicted by a grand jury (Filing
No. 1), and as discussed above, any errors in the formation of
that grand jury could not have prejudiced him because he was
later convicted by a petit jury under a heightened standard of
proof (Filing No. 40).  Cuevas-Arredondo's argument that he was
denied a petit jury is baseless because he was convicted by one
(*See Id*.).  Any assertion by counsel that Cuevas-Arredondo was
denied a petit jury would have been frivolous, and it certainly
would not have altered the result of the proceeding if counsel
had made it.  Cuevas-Arredondo's remaining arguments that he was
denied trial by jury are equally absurd.  Although Cuevas-

-10-

Arredondo adopted the findings of the Presentence Investigation
Report (Filing No. 55) and objected only to an obstruction of
justice sentencing enhancement (*See* Filing No. 49), here he
argues that the Court's adoption of the report "makes the trial
court in [this] case part of the Executive branch, and not the
Judicial branch of the government." (2255 Motion, at 33.)  He
goes on to argue that therefore his punishment constituted a bill
of attainder (*Id.* at 34).  A bill of attainder must contain the
following three elements:  "nonjudicial punishment, lack of a
judicial trial, and specificity in identification of the
individuals affected."  16B Am. Jur. 2d *Constitutional Law* § 671.
As discussed above, this Court is clearly an Article III, not an
Article IV, court, and part of the Judicial, not the Executive,
branch of government.  Although he was specifically identified,
Cuevas-Arredondo was judicially tried and punished.  Clearly
there was no bill of attainder here.  If counsel had raised this
argument at trial or on appeal, there would have been no
difference in the result of the proceeding and therefore Cuevas-
Arredondo could not have been prejudiced by any failure on
counsel's part to present the argument.

          4. Due Process - Sufficiency of Indictment

          Cuevas-Arredondo argues that counsel was ineffective
because he did not object to the sufficiency of the indictment
against him at trial or argue sufficiency on appeal.  Cuevas-

Arredondo correctly states that an indictment must contain a statement of "essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). He also correctly states that the indictment must contain "offense conduct/relevant conduct" which he describes as mental state or quantity of narcotics involved (2255 Motion, at 35). However, the grand jury in this case did include each essential fact necessary for each of the charges Cuevas-Arredondo was convicted of. For example, Count I alleged a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 18 U.S.C. § 2. Section 841(a) provides that it is "unlawful for any person knowingly or intentionally - (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." Count I states that Cuevas-Arredondo "did knowingly and intentionally possess with intent to distribute . . . a mixture or substance containing . . . [a] controlled substance." (Indictment, Filing No. 1.) Section 841(b)(1)(A)(viii) provides penalties for "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers . . . ." Count I states that Cuevas-Arredondo possessed "50 grams or more but less than 500 grams" of methamphetamine (Indictment, Filing No. 1). The indictment clearly addresses each essential element of the crime charged including the mental state (knowingly, intentionally) and quantity of drugs involved (50 grams or more). A review of the

-12-

indictment and the applicable statutes reveals Counts II and III also contain all the essential facts constituting the offenses charged. Therefore this claim lacks merit and, if counsel had raised it at trial or upon review, the result of the proceeding would not have been different. There was no ineffective assistance of counsel here.

       5. Double Jeopardy

       Next, Cuevas-Arredondo asserts that his counsel was ineffective when he did not raise, at trial or on appeal, his argument that a sentence of supervised release is impermissible dual sentencing without statutory basis and in violation of the Double Jeopardy Clause of the Constitution. Inasmuch as this argument rests on a mistaken interpretation of the law, the Court will conclude that counsel was not ineffective in failing to raise it. Cuevas-Arredondo makes two distinct arguments in this area. First, Cuevas-Arredondo argues that there is no statutory basis for a sentence of supervised release and that the sentencing guidelines were declared wholly unconstitutional by the Supreme Court. He then argues that under the "old law," supervised release did not exist and that therefore his entire sentence is unconstitutional. Second, Cuevas-Arredondo asserts that supervised release violates both the Double Jeopardy Clause and the Cruel and Unusual Punishment Clause. U.S. Const. amends. V, VIII.

There is statutory authority for supervised release and the sentencing guidelines were not declared wholly unconstitutional by the Supreme Court.  Cuevas-Arredondo argues that "[t]here are no statutes regarding supervised release as a form of punishment . . ." and that therefore, "[t]here is no authority under criminal charges for a sentence of supervised release." (2255 Motion, at 41, 44.)  However, supervised release is specifically provided for in the United States Code.  *See* 18 U.S.C. § 3583.  Alternatively, Cuevas-Arredondo argues that because the supervised release provisions are contained in a different section of the code from the other sentencing sections, they are in some way incompatible.  But it makes no difference if the authorizing language is contained in two different sections of the code.  Section 3583 enjoys equal dignity with all the other sections of the code.

Cuevas-Arredondo states that "[t]he Supreme Court of the United States declared the United States Sentencing Guidelines invalid for constitutional reasons." (2255 Motion, at 39.)  However, only the portions of the sentencing guidelines which made sentencing within the guidelines mandatory were declared unconstitutional by the Supreme Court.  *See United States v. Booker*, 543 U.S. 220, 266 (2005).  Therefore, Cuevas-Arredondo's argument that because the *Booker* Court declared the

-14-

sentencing guidelines unconstitutional, the "old law" takes its place must fail.  (*See* 2255 Motion at 43-44.)

Finally, Cuevas-Arredondo's Fifth and Eighth Amendment arguments lack merit.  Cuevas-Arredondo contends that his term of supervised release offends the Double Jeopardy Clause.  "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend V.  Cuevas-Arredondo was tried only one time.  Moreover, Cuevas-Arredondo's concerns about the validity of the supervised release statute are not the type of issue the Double Jeopardy Clause addresses.  It was not ineffective assistance for counsel not to raise this issue.  Similarly, supervised release is not cruel or unusual punishment, and Cuevas-Arredondo cites to no case holding that it is.  Having concluded that this claim has no merit, it follows that counsel was not ineffective in failing to object on this basis or to raise the issue on appeal.

6. Whether Titles 18 and 28 were Lawfully Enacted

Cuevas-Arredondo argues that Public Law No. 80-772, which enacts Title 18 of the United States Code and confers jurisdiction upon the federal district courts for offenses committed against the United States, and Public Law No. 80-773, which enacts Title 28, were never properly enacted by Congress and therefore the criminal jurisdiction of the district courts was "never enacted into positive law, [is] unconstitutional on

-15-

[its] face, and [is] null and void ab initio." (2255 Motion, at
58.) However, both laws were properly enacted. As to Public Law
No. 80-772, "[o]n April 24, 1947, H.R. 3190 was introduced in the
House . . . . The House passed H.R. 3190, with amendments, on
May 12, 1947 . . . . The bill, with amendments was passed by the
Senate on June 18, 1948, and, on the same date, the House
concurred in the Senate amendments." *See* New Title 18, United
States Code Crimes and Criminal Procedure, 1948 U.S.C.C.A.N. i,
iii. H.R. 3190 was signed by President Truman at 12:23 p.m. on
June 25, 1948. Public Law No. 80-773 was "introduced [as] H.R.
3214 in the Eightieth Congress on April 25, 1947 . . . . H.R.
3214, with amendments, was passed in the House on July 7, 1947
. . . . The bill, with amendments was passed by the Senate on
June 12, 1948 . . . and on June 16, 1948, the House concurred in
the Senate amendments." *See* New Title 28, United States Code
Judiciary and Judicial Procedure, 1948 U.S.C.C.A.N. III, IV-V.
H.R. 3214 was also signed by President Truman at 12:25 p.m. on
June 25, 1948. The Court finds nothing improper or unusual about
the method by which these laws were enacted.

There was no violation of the Presentment Clause, as
claimed by Cuevas-Arredondo, because the President signed each
bill into law. There was also no violation of the separation of
powers doctrine because each branch properly fulfilled its
constitutional role. This is not a case like *INS v. Chada*, 462

-16-

U.S. 919 (1983), cited by Cuevas-Arredondo, because that case involved a legislative veto of executive branch action and here no such veto is contemplated and the law in question was passed according to the "single, finely wrought and exhaustively considered, procedure . . ." envisioned by the Constitution. *Id.* at 951. Finally, statutes properly enacted by the United States Congress and signed by the President do not depend for their validity on being published in the Federal Register, despite Cuevas-Arredondo's suggestion to the contrary. In short, a review of the applicable law reveals that Cuevas-Arredondo's contention that the criminal jurisdiction of the federal courts is invalid lacks merit. Counsel was not ineffective in failing to object at trial or argue otherwise on appeal.

       7. Subject Matter Jurisdiction

       Lastly, Cuevas-Arredondo argues that this Court and other federal courts lack subject matter jurisdiction over his case. Specifically, he states that

> Congress [must] expressly use Article III to ordain and establish courts with the judicial power of the United States otherwise it creates courts with Article IV authority. . . . Congress has consistently created Article IV federal courts including a United States Supreme Court that exercises Article IV powers appropriated to appellate court.

-17-

(2255 Motion, at 83.)[2]  Cuevas-Arredondo then goes on to argue
that these "counterfeit law courts" including the "administrative
version of the supreme Court called the U.S. Supreme Court" lack
subject matter jurisdiction over his case (*Id.* at 85).   While
interesting, this argument is pure fantasy.   This Court's
jurisdiction over criminal matters derives from 18 U.S.C. § 3231,
which as discussed above is a lawfully enacted statute presently
in force, and which was in force at the time Cuevas-Arredondo
committed his crime.   Cuevas-Arredondo was charged and convicted
of a crime against the laws of the United States, and this Court
concludes that it had jurisdiction to hear the case.   Counsel was
not ineffective in failing to raise this issue at trial or on
appeal.

### III. CONCLUSION

        For the foregoing reasons the Court finds that Cuevas-
Arredondo's motion to vacate, set aside, or correct sentence

---

[2] This statement is incorrect.  The Constitution provides that "[t]he
judicial power of the United States shall be vested in one supreme Court, and
in such inferior Courts as the Congress may from time to time ordain and
establish."  U.S. Const. art. III, § 1.  It does not demand that Congress
"expressly use" anything in order to ordain or establish a Court under the
Article.  Moreover, the Constitution itself establishes the Supreme Court and
Congress was never required to take any action at all to establish it.

should be denied.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 4th day of January, 2008.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-19-